**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
www.flsb.uscourts.gov

In re:  ROLANDO ALFREDO RODRIGUEZ,                    Case No.: 25-10340-RAM
_____Debtor._____/             Chapter 13

**<u>EXPEDITED MOTION FOR CLARIFICATION THAT THE AUTOMATIC STAY</u>**
**<u>DOES NOT STAY PROCEEDINGS AGAINST THE NON-DEBTOR ENTITY REAL</u>**
**<u>PROPERTY OWNER, AND FOR AN AWARD OF A REASONABLE BANKRUPTCY</u>**
**<u>ATTORNEY'S FEE PURSUANT TO THE CONTRACT BETWEEN THE RELEVANT PARTIES</u>**

FMF&J INVESTMENTS, LLLP, ("FMF&J") moves this Court for entry of an order clarifying that the automatic stay in this case does not stay a foreclosure action against the non-debtor entity real property owner and awarding it a reasonable bankruptcy attorney's fee pursuant to the written agreement between the relevant parties, and states:

1.      FMF&J is holder of a *Corrected Final Judgment of Foreclosure (Corrected to Add Defendants' Names)* ("the Final Judgment of Foreclosure") attached hereto as *Exhibit A* and entered by the Miami-Dade County Circuit Court ("the Foreclosure Court") on December 17, 2024 in Case No. 2024-006049-CA-01 styled *FMF&J Investments, LLLP v. Huram Enterprises, Inc., Rolando Alfredo Rodriguez, Maria V. Matamoros, et al* ("the Foreclosure Action");

2.      There was no motion for rehearing or appeal of the Final Judgment of Foreclosure;

3.      The Final Judgment of Foreclosure called for the sale of real property located in Miami-Dade County and owned not by the Debtor, but by HURAM ENTERPRISES, INC. ("the Non-Debtor Real Property");

4.      Debtor is listed in the SunBiz.org report attached hereto as *Exhibit B* as the President and Registered Agent of HURAM ENTERPRISES, INC.;

5.      Debtor's non-debtor spouse, Maria V. Matamoros, is listed in the same SunBiz.org report as the Vice President HURAM ENTERPRISES, INC.;

6.      The foreclosure sale date was January 15, 2025;

7.      The Debtor filed the above styled Chapter 13 Bankruptcy on the eve of the foreclosure sale, January 14, 2025, and filed the *Suggestion of Bankruptcy* attached hereto as *Exhibit C* in the Foreclosure Action on the same day, stating confusingly and perhaps inaccurately, "This action is founded on a claim from which a discharge would be a release or that seeks to impose a charge on the property of the estate";

8.      The result of the Debtor's filing of the *Suggestion of Bankruptcy* in the Foreclosure Action was that the foreclosure sale was improperly canceled despite the fact that the owner of the property, HURAM ENTERPRISES, INC., is not, and never has been, a debtor in bankruptcy;

9.     Debtor's filing of the *Suggestion of Bankruptcy* in the Foreclosure Action was an act in bad faith intended to delay, and successful in delaying, FMF&J from the foreclosure relief to which it is legally and equitably entitled;

10.     To date, the Debtor has filed no schedules, statements, a plan, or payment advices in this Bankruptcy Case, and it appears at this point that Debtor may have filed his "skeleton" bankruptcy petition in bad faith to improperly hinder and delay FMF&J in its just pursuit of its collateral, with no intent to actually carry through with a Chapter 13 proceeding;

11.     As a result of Debtor's misconduct, FMF&J has incurred reasonable bankruptcy attorney's fees for which Debtor (and HURAM ENTERPRISES, INC., and Debtor's spouse) is/are obligated to pay pursuant to Paragraph 20 of the *Mortgage and Security Agreement* and Paragraph 7 of the *Promissory Note* attached hereto as *Composite Exhibit D*;

WHEREFORE, FMF&J INVESTMENTS, LLLP, respectfully prays that this Honorable Court enter an order (i) clarifying that the automatic stay does not apply in any way to limit FMF&J in its efforts against the Non-Debtor Real Property and against any Defendant other than Debtor, and in the event this bankruptcy case is dismissed, against the Debtor as well; that FMF&J may proceed unabated in the Foreclosure Court and in the Foreclosure Action

to reset and conduct the foreclosure sale of the Non-Debtor Real Property; that the

Foreclosure Court may thereafter issue its *Certificate of Sale* and *Certificate of Title*; and

that FMF&J and the Foreclosure Court may also do any and all things ordinarily done in a

foreclosure action including, but not limited to, amending its Final Judgment of Foreclosure

to recover any post-petition bankruptcy attorney's fees awarded by this Court, to recover

any other post-petition fees and/or costs the Foreclosure Court may award, and seeking,

issuance, and execution of a writ of possession and/or a deficiency judgment; (ii) awarding

FMF&J a reasonable bankruptcy attorney's fee of $1,750.00; and (iii) for such other relief as

this Court may deem appropriate.

THE BANKRUPTCY LAW OFFICES
OF JAMES SCHWITALLA, P.A.
Park Place II
12954 SW 133 CT
Miami, FL 33186
Office (305) 278-0811


/s/ James Schwitalla, Esquire
James Schwitalla, Esquire
F.B.N. 911488
Attorney for FMF&J INVESTMENTS, LLLP
jws@miamibkc.net

**IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA**

CASE NO: 2024-006049-CA-01
SECTION: CA21
JUDGE: David C. Miller

**FMF&J INVESTMENTS, LLLP**

Plaintiff(s)

vs.

**HURAM ENTERPRISES, INC. et al**

Defendant(s)

_____/

## CORRECTED FINAL JUDGMENT OF FORECLOSURE (CORRECTED TO ADD DEFENDANTS' NAMES)

This cause came on before the court on December 11, 2024, on Plaintiff FMF&J Investments, LLLP's, Motion for Entry of Default and for Judgment on the Pleadings. The Motion was duly noticed on the represented Defendants, and the Defendants HURAM ENTERPRISES, INC., ROLANDO ALFREDO RODRIGUEZ, MARIA V. MATAMOROS de RODRIGUEZ, were served via email and U.S. Mail with the notice. After argument, the Court granted the Plaintiff's Motion on December 11, 2024. The Motion was supported by sworn declarations of claim and attorney fees and costs. These were unrebutted and uncontested. There being no further judicial labor to be done, and the Court being fully advised in the premises

IT IS ORDERED AND ADJUDGED that:

1. **Amounts Due.** Plaintiff, FMF&J Investments, LLLP, 1376 S. Venetian Way, Miami Beach, FL 33139, is due the following sums:

   | | |
   |---|---:|
   | a. Principal on the note: | $ 293,000.00 |
   | b. Interest to October 31, 2024 | 196,799.67 |
   | c. Advancements (Property Taxes) | 40,895.51 |
   | d. Interest on advancements | 8,334.57 |
   | e. Late fees | 9,815.50 |
   | f. Actual interest only payments made (all late) | (45,070.00) |
   | g. **Subtotal:** | **503,775.25** |
   | h. Per diem ($96.33) from 10.31.2024 to 1.15.25 sale date | 7,321.08 |

**Exhibit A**
**1 of 5**

| | |
|---|---|
| a. **Subtotal Principal and Interest** | **$ 511,096.33** |
| j. Attorney fees | 27,805.00 |
| k. costs | 3,792.04 |
| **Total due as of December 11, 2024** | **$ 542,693.37** |

LESS: Escrow balance  -0-

**GRAND TOTAL**                                                  **$ 542,693.37**

**2**.      All of which shall bear interest at the legal rate (currently 9.5%) as periodically adjusted.

**3.      Lien on Property.**  Plaintiff holds an equitable lien and/or a judgment lien as set forth in the Order Granting Summary Judgment for the total sum superior to all claims or estates of defendant(s), HURAM ENTERPRISES, INC., ROLANDO ALFREDO RODRIGUEZ, MARIA V. MATAMOROS de RODRIGUEZ, TLOA OF FLORIDA LLC, TLOA SERVICING, LLC, MIAMI DADE COUNTY, and UNKNOWN TENANT; on the following described property in Miami Dade County, Florida:

The Southwest 1/4 of the Southwest 1/4 of the Northwest 1/4 of the Northeast 1/4 of

Section 3, Township 56 South, Range 38 East, lying and being in Miami-Dade County,

Florida.

LESS AND EXCEPT that portion thereof as conveyed to the County of Dade by Right of Way Deed recorded in Official Records Book 9579, Page 423, of the Public Records of Miami-Dade County, Florida.

a/k/a 20155 SW 188th Street, Miami, FL 33187

Parcel: 30-6803-000-0076

4. **Sale of Property.**  If the grand total amount described in Paragraph 1 with interest at the rate described in Paragraph 2 and all costs accrued subsequent to this judgment are not paid, the Clerk of the Courts shall sell the subject property at public sale. Pursuant to Administrative Order 09-18, the Clerk of the Courts for the Eleventh Judicial Circuit is authorized to conduct on-line public auctions of real property in lieu of on-site auctions. The Clerk of the Courts shall conduct the sale online at www.miamidade.realforeclose.com commencing at **9:00 A.M. on January 15, 2025**, to the highest bidder for cash.

**Exhibit A**
**2 of 5**

5.      **Costs.**  Plaintiff must advance all subsequent costs of this action and must be reimbursed for them by the clerk if plaintiff is not the purchaser of the property for sale, provided, however, that the purchaser of the property for sale must be responsible for the documentary stamps payable on the certificate of title. If plaintiff is the purchaser, the clerk must credit plaintiff's bid with the total sum with interest and costs accruing subsequent to this judgment, or such part of it as is necessary to pay the bid in full.

6.      **Distribution of Proceeds.**  On filing the certificate of title the clerk must distribute the proceeds of the sale, so far as they are sufficient, by paying: first, all of plaintiff's costs; second, documentary stamps affixed to the certificate; third, plaintiff's attorneys' fees; fourth, the total sum due to plaintiff, less the items paid, plus interest at the rate prescribed in paragraph 1 from this date to the date of the sale; and by retaining any remaining amount pending further order of this court.

7.      **Right of Redemption/Right of Possession.**  On filing the certificate of sale, defendant(s) and all persons claiming under or against defendant(s) since the filing of the notice of lis pendens must be foreclosed of all estate or claim in the property and defendant's right of redemption as prescribed by *section 45.0315, Florida Statutes,* must be terminated, except as to the rights of a bona fide tenant occupying residential premises under the federal Protecting Tenants at Foreclosure Act, *12 U.S.C § 5220*, note, or section 83.5615, Florida Statutes, and claims or rights under chapter 718 or chapter 720, Florida Statutes, if any. On the filing of the certificate of title, the person named on the certificate of title must be let into possession of the property, subject to the rights of a bona fide tenant occupying residential premises under the federal Protecting Tenants at Foreclosure Act, *12 U.S.C. § 5220*, note, or section 83.5615, Florida Statutes.

8.      **Attorneys' Fees.**  The Court finds, based upon the declarations/testimony presented and upon reasonable inquiry of counsel that the hours petitioned for and set forth in the declaration of Marshall A. Adams were reasonably expended by plaintiff's counsel and that the hourly rates for counsel and staff were appropriate. The Court notes that there was no objection to any of the relief requested and granted at the hearing and that both the Motions for Default and Judgment on the Pleadings, as well as other portions of the Court file contained the Declarations which disclosed the exact amounts being sought by the Plaintiff and awarded herein. Plaintiff's counsel represents that the attorneys' fee awarded does not exceed its contract fee with the plaintiff. The court finds that there is/are no reduction or enhancement factors for consideration by the court under *Florida Patients Compensation Fund v. Rowe*, 472 So. 2d 1145 (Fla. 1985), and none have been applied for by Plaintiff.

9.      **Re-establishment of Lost Note**. The court finds that the plaintiff has re-established the terms of the lost note and established its right to enforce the instrument as required by law. Plaintiff must hold the defendant(s) maker of the note harmless and must indemnify defendant(s) for any loss Defendant(s) may incur by reason of a claim

**Exhibit A**
**3 of 5**

by any other person to enforce the lost note. Judgment is hereby entered in favor of the plaintiff as to its request to enforce the lost note. The Plaintiff has adequately protected the Defendants against loss that might occur by reason of a claim by another person to enforce the instrument by agreeing to indemnify the Defendants for such claims.

10. **Reformation.** The Court finds that as a result of scrivener error, the Mortgage and note reflected the Plaintiff's name as FMF&J INVESTMENTS, LLP, when it should have been FMF&J INVESTMENTS, LLLP. The Court grants reformation of the Mortgage and note to reflect the true name of the Plaintiff as FMF&J INVESTMENTS, LLLP.

11. **Jurisdiction Retained.** Jurisdiction of this action is retained to enter further orders that are proper including, without limitation, a deficiency judgment.

**IF THIS PROPERTY IS SOLD AT PUBLIC AUCTION, THERE MAY BE ADDITIONAL MONEY FROM THE SALE AFTER PAYMENT OF PERSONS WHO ARE ENTITLED TO BE PAID FROM THE SALE PROCEEDS PURSUANT TO THE FINAL JUDGMENT.**

**IF YOU ARE A SUBORDINATE LIENHOLDER CLAIMING A RIGHT TO FUNDS REMAINING AFTER THE SALE, IF ANY, YOU MUST FILE A CLAIM WITH THE CLERK NO LATER THAN THE DATE THAT THE CLERK REPORTS THE FUNDS AS UNCLAIMED. IF YOU FAIL TO FILE A TIMELY CLAIM, YOU WILL NOT BE ENTITLED TO ANY REMAINING FUNDS.**

**DONE** and **ORDERED** in Chambers at Miami-Dade County, Florida on this 17th day of December, 2024.

2024-006049-CA-01 12-17-2024 4:05 PM

2024-006049-CA-01 12-17-2024 4:05 PM
Hon. David C. Miller

**CIRCUIT COURT JUDGE**
Electronically Signed

<div style="border:1px solid red;">

Final Order as to All Parties SRS #: **12** (Other)

THE COURT DISMISSES THIS CASE AGAINST ANY PARTY NOT LISTED IN THIS FINAL ORDER OR PREVIOUS ORDER(S). THIS CASE IS CLOSED AS TO ALL PARTIES.

</div>

**Electronically Served:**

**Exhibit A**
**4 of 5**

David Sherman, foreclosureparalegal2@miamidade.gov
Joshua H Sheskin, JHS@LubellRosen.com
Joshua H Sheskin, ged@lubellrosen.com
Joshua H Sheskin, dahlia@lubellrosen.com
Maria V. Matamoros de Rodriguez, mvrmatamoros@gmail.com
Marshall A. Adams, maa@adamslawfl.com
Marshall A. Adams, gld@adamslawfl.com
Rolando Alfredo Rodriguez, rarodriguez.i62@gmail.com


**Physically Served:**

**Exhibit A**
**5 of 5**



DIVISION OF CORPORATIONS

# Detail by Entity Name

Florida Profit Corporation
HURAM ENTERPRISES INC.

**Filing Information**

| | |
|---|---|
| **Document Number** | P16000028716 |
| **FEI/EIN Number** | 81-5011832 |
| **Date Filed** | 03/29/2016 |
| **Effective Date** | 03/30/2016 |
| **State** | FL |
| **Status** | INACTIVE |
| **Last Event** | ADMIN DISSOLUTION FOR ANNUAL REPORT |
| **Event Date Filed** | 09/23/2022 |
| **Event Effective Date** | NONE |

**Principal Address**

6740 SW 125TH AVE
MIAMI, FL 33183

**Mailing Address**

6740 SW 125TH AVE
MIAMI, FL 33183

**Registered Agent Name & Address**

RODRIGUEZ, ROLANDO A
6740 SW 125TH AVE
MIAMI, FL 33183

Name Changed: 03/27/2019

**Officer/Director Detail**

**Name & Address**

Title P

RODRIGUEZ, ROLANDO A
6740 SW 125TH AVE
MIAMI, FL 33183

Title VP

MATAMOROS, MARIA V
6740 SW 125TH AVE

**Composite
Exhibit B
1 of 2**

MIAMI, FL 33183

### Annual Reports

| Report Year | Filed Date |
|-------------|------------|
| 2019 | 03/27/2019 |
| 2020 | 06/30/2020 |
| 2021 | 04/29/2021 |

### Document Images

| | |
|---|---|
| 04/29/2021 -- ANNUAL REPORT | View image in PDF format |
| 06/30/2020 -- ANNUAL REPORT | View image in PDF format |
| 03/27/2019 -- REINSTATEMENT | View image in PDF format |
| 05/01/2017 -- ANNUAL REPORT | View image in PDF format |
| 03/29/2016 -- Domestic Profit | View image in PDF format |

Florida Department of State, Division of Corporations

**Composite
Exhibit B
2 of 2**

**IN THE COUNTY COURT OF THE
ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI DADE COUNTY, FLORIDA**

**CASE NO: 2024-6049-CA-01**

**FMF&J INVESTMENTS LLLP**
                    **Plaintiff,**
**vs.**

**HURAM ENTERPRISES INC ET AL**
                         **Defendant (s),**
_____/

### <u>SUGGESTION OF BANKRUPTCY</u>

THE DEFENDANT, <u>**Rolando Rodriguez**</u> (hereinafter "Debtor"), by and through her undersigned counsel, hereby informs this Court and Plaintiff's counsel of the following:

1.    Debtor has filed a petition for relief under Title 11, United States Code, in the United States Bankruptcy Court for the Southern District of Florida, which bears case number: _____

      _____**25-10340**_____, **Chapter 13**   .

2.    Relief was ordered on <u>01/14/2025.</u>

3.    This action is founded on a claim from which a discharge would be a release or that seeks to impose a charge on the property of the estate.

4.    This suggestion of bankruptcy is for bankruptcy notice purposes only and does not constitute a notice of appearance by the undersigned on this case.

WHEREFORE, Debtor respectfully suggests that pursuant to 11 U.S.C.362, all proceedings in this cause should be stayed pending further Order of the Bankruptcy Court, Southern District of Florida.

### <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that a true and correct copy of the foregoing Suggestion of Bankruptcy was furnished upon the Clerk of the Court via electronic transmission and David Alan Sherman, County Attorney's Office, Miami-Dade, Miami Dade County Attorney's Office,111 NW 1st St Ste 2810,Miami, FL 33128; Marshall A. Adams, P.A.,401 E Las Olas Blvd Ste 1400,Fort Lauderdale, FL 33301; Joshua Howard Sheskin, Exoro Law PLLC,2700 Glades Cir Ste 142,Fort Lauderdale, FL 33327; Law Offices of Evan M. Rosen, P.A.,B-224,2719 Hollywood Blvd,  Hollywood, FL 33020-4821 on 01/14/2025.

                         **Law Offices of Patrick L. Cordero, PA**
                         <u>ecfmail@pcorderolaw.com</u>
                         7333 Coral Way
                         Miami, FL 33155
                         (305) 445-4855

                         /s/ Marianela Luporini
                         Marianela Luporini, Esq.
                         Florida Bar 1011376

# Composite
# Exhibit C
# 1 of 1

CFN: 20190275439 BOOK 31428 PAGE 2876
DATE:05/03/2019  02:06:24 PM
MTG DOC 1,025.50
INTANGIBLE 586.00
HARVEY RUVIN, CLERK OF COURT, MIA-DADE CTY

THIS INSTRUMENT PREPARED BY
AND SHOULD BE RETURNED TO:
Campbell Legal Group, P.L.L.C
420 So. Dixie Highway, Suite 2B
Coral Gables, FL 33146

HURAM ENTERPRISES, INC.
 AND Rolando A. Rodriguez,
 President; And, Maria V.
 Matamoros, Vice-President, at
6740 SW 125th Avenue
Miami, FL 33183

**THIS IS A BALLOON MORTGAGE AND PROMISSORY NOTE AND THE FINAL PAYMENT OR THE PRINCIPAL BALANCE DUE ON MATURITY IS $293,000.00, TOGETHER WITH ACCRUED INTEREST, IF ANY, AND ALL ADVANCEMENTS MADE BY MORTGAGEE UNDER THE TERMS OF THIS MORTGAGE.**

## MORTGAGE AND SECURITY AGREEMENT

**THIS MORTGAGE** is made as of this 29th day of March 2019, between **HURAM ENTERPRISES INC., AND, ROLANDO ALFREDO RODRIGUEZ**, President, and **MARIA V. MATAMOROS de RODRIGUEZ**, Vice-President, together and individually, Residing at 6740 S.W. 125th Avenue, Miami,  in the County of Miami-Dade in the State of Florida 33183, hereinafter referred to as "Mortgagor," and **FMF&J Investments, LLP, a Florida limited liability partnership**, herein referred to as the "Mortgagee", its successors and/or assigns as their interests may appear, whose address is 11 Island Avenue, Ph10, Miami Beach, FL 33139. The terms Mortgagor and Mortgagee shall denote the singular and/or plural wherever the context so requires or admits.

WHEREAS, Mortgagor is justly indebted to Mortgagee, having executed and delivered to Mortgagee that certain Promissory Note ("Note") bearing even date herewith, wherein Mortgagor promises to pay to Mortgagee the principal sum of **TWO HUNDRED N I N E T Y - T H R E E  T H O U S A N D  D O L L A R S  A N D  N O  C E N T S (U.S. $293,000.00)**, in lawful money of the United States of America, with interest thereon at the rate and times, in the manner and according to the terms and conditions specified in the Note, all of which are incorporated herein by reference.

## WITNESSETH:

That for good and valuable considerations, and also in consideration of the aggregate sum named in the Note hereinafter described, the Mortgagor does hereby grant, bargain, sell, alien, remise, release, convey, confirm and mortgage unto the Mortgagee all that certain piece of property and tract of land of which the said Mortgagor is now seized and possessed and in actual possession, situate in the County of Miami-Dade and State of Florida, described as follows:

SEE EXHIBIT "A" ATTACHED HERETO
AND MADE A PART HEREOF

TOGETHER with all structures and improvements now and hereafter erected on the

CFN: 20190275439 BOOK 31428 PAGE 2877

property and the fixtures now or hereafter attached thereto, and all rents, issued, proceeds, and profits accruing and to accrue from said property, including replacements and additions thereto; and all easements, rights, appurtenances, rents, royalties, mineral, oil, and gas rights and profits, water, water rights, and water stock; also all gas, steam, electric, water and other heating, cooking, refrigerating, lighting, plumbing, ventilating, irrigating, and power systems, machines, appliances, fixtures, and appurtenances, which now or may hereafter pertain to or be used with, in or on said property, even though they may be detached or detachable (the above- described land together with all structures and improvements located thereon and all fixtures attached thereto, as well as all of the above-described tangible and intangible personal property and rights are sometimes hereinafter referred to as the "Mortgaged Property"); all of the foregoing shall be deemed to be and remain a part of the property covered by this Mortgage;

TO SECURE to Mortgagee (a) the repayment of the indebtedness evidenced by the Note, with interest thereon, the payment of all other sums, with interest thereon, advanced in accordance herewith to protect the security of this Mortgage, and the performance of the covenants and agreements of Mortgagor herein contained and contained in each of the Loan Documents, and (b) the repayment of any future advances, with interest thereon, made to Mortgagor by Mortgagee pursuant to Paragraph 18 hereof ("Future Advances").

TO HAVE AND TO HOLD the same, together with the tenements, hereditaments and appurtenances, unto the Mortgagee, in fee simple.

IT IS AGREED that if any of the Mortgaged Property is of a nature so that a security interest therein can be perfected under the Uniform Commercial Code, this instrument shall constitute a Security Agreement and Mortgagor agrees to join with the Mortgagee in the execution of any financing statements and to execute any other instruments that may be required for the perfection or renewal of such security interest under the Uniform Commercial Code.

PROVIDED, ALWAYS, that if the Mortgagor shall pay unto the Mortgagee the sums of money set forth in the Note in accordance with the terms thereof, and shall perform, comply with and abide by each and every of the agreements, stipulations, conditions and covenants thereof, and of this Mortgage, then Mortgagee shall cause this Mortgage to be satisfied.

Mortgagor covenants that Mortgagor is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant, and convey the Mortgaged Property, that the Mortgaged Property is unencumbered and that Mortgagor will warrant and defend generally the title to the Mortgaged Property against all claims and demands, subject to any declarations, easements, or restrictions listed in a schedule of exceptions to coverage in any title insurance policy insuring Mortgagee's interest in the Mortgaged Property.

1. **PAYMENT OF INTEREST ONLY AND PREPAYMENT PENALTY.** Mortgagor shall promptly pay when due payments of interest only on the indebtedness evidenced by the Note, if applicable, late charges as provided in the Note and the principal of and interest on any Future Advances secured by this Mortgage. If a Balloon Mortgage and Note, then payable upon maturity thereof. Maker may not pay all or a portion of the principal amount of this Note without penalty within the first six (6) months of this Note (the "Prepayment Fee Cut-Off Date"). If any prepayment with respect to the principal amount of this Note is made prior to the

Composite
Exhibit D
2 of 23

CFN: 20190275439 BOOK 31428 PAGE 2878

Prepayment Fee Cut-Off Date, Maker shall pay to Payee, a prepayment fee equal to six (6) months of interest, less the difference between all other interests amounts due hereunder.

2.    **INSURANCE.**

    (a)    Mortgagor shall keep the Mortgaged Property continuously insured, to the extent of its full insurable replacement value, against loss or damage (including rent loss) by fire, with extended coverage and coverage against loss or damage by vandalism, malicious mischief, sprinkler leakage, lightening, hail, explosion, riot, riot attending a strike, civil commotion, aircraft, smoke, and, if available, against flood and against other hazards as Mortgagee may require from time to time. If applicable, Mortgagor shall also maintain comprehensive general public liability and property damage insurance with contractual liability endorsement and workmen's compensation insurance, and in such total amounts as Mortgagee may require from time to time.

    (b)    During the course of any construction or repair to the Mortgaged Property, if any, Mortgagor shall acquire and maintain builders completed value risk insurance against all risks of physical loss, including collapse and transit coverage, during construction of such improvements, with deductibles not to exceed $5,000.00 in non-reporting form, covering the total value of work performed and equipment, supplies and materials furnished. Such policy of insurance should contain the "permission to occupy upon completion of work or occupancy" endorsement.

    (c)    All policies, including policies for any amounts carried in excess of the required minimum and policies not specifically required by Mortgagee, shall be in form satisfactory to Mortgagee, shall be issued by companies satisfactory to Mortgagee, shall be maintained in full force and effect, shall be assigned and delivered to Mortgagee, with premiums prepaid, as collateral security for payment of the indebtedness secured hereby, shall be endorsed with a standard Mortgagee clause in favor of Mortgagee, not subject to contribution, and shall provide for at least thirty (30) days notice of cancellation to Mortgagee.

    (d)    If the insurance, or any part thereof, shall expire, or be canceled, or become void or voidable by reason of Mortgagor's breach of any condition thereof, or if Mortgagee determines that such coverage is unsatisfactory by reason of the failure or impairment of the capital of any company in which the insurance may then be carried, or if for any reasons whatever the insurance shall be unsatisfactory to Mortgagee, Mortgagor shall place new insurance on the Mortgaged Property satisfactory to Mortgagee. All renewal policies, with premiums paid, shall be delivered to Mortgagee at least thirty (30) days before expiration of the old policies.

    (e)    In the event of loss, Mortgagor will continue to promptly and completely perform all of its obligations arising under the Note and this Mortgage (including the payment of monies under the Note) and Mortgagor will give immediate notice thereof to Mortgagee, and Mortgagee may make proof of loss if not made promptly by Mortgagor, provided however, that any adjustment of a proof of loss shall require the prior written consent of Mortgagee. Each insurance company concerned is hereby authorized and directed to make payment under such insurance, including return of unearned premiums, directly to Mortgagee instead of to Mortgagor and Mortgagee jointly, and Mortgagor appoint Mortgagee, irrevocably, as Mortgagor's attorney-in-fact to endorse any draft therefore. Mortgagee shall have the right to retain and apply the proceeds of any such insurance, at its election, to reduction of the indebtedness secured hereby

Composite
Exhibit D
3 of 23

after payment of all of Mortgagee's fees, costs, and expenses incurred in connection with the recovery of such insurance proceeds (including without limitation the fees and expenses of its counsel), or Mortgagee may at its sole discretion, apply all or any portion of the proceeds of any such insurance in or to restoration or repair of the property damaged after payment of the aforedescribed fees, costs, and expenses of Mortgagee, upon such terms as Mortgagee may specify. If Mortgagee elects to use any insurance proceeds to reduce the indebtedness as aforesaid, Mortgagee may apply such proceeds in the order and in the amounts that Mortgagee, in its sole discretion, may elect, to the payment of principal (whether or not then due and payable) or interest on any sums secured by this Mortgage. Mortgagee's application of insurance proceeds to reduction of the indebtedness secured by this Mortgage shall not excuse or modify Mortgagor's obligation to continue to pay the installments of interest and/or principal required under the Note unless the amount of such insurance proceeds received by Mortgagee is sufficient to repay in full all interest, principal, and all other sums required to be paid to Mortgagee under the Note or this Mortgage. Such policies of insurance and all renewals thereof are hereby unconditionally assigned to Mortgagee as additional security for payment of the indebtedness hereby secured and hereby agree that after default hereunder any values available thereunder upon cancellation or termination of any of said policies or renewals, whether in the form of return of premiums or otherwise, shall be payable to Mortgagee as assignee thereon. If Mortgagee becomes the owner of the Mortgaged Property or any part thereof by foreclosure or otherwise, such policies, including all right, title, and interest of Mortgagor thereunder, shall become the absolute property of Mortgagee.

      3.    **TAXES AND OTHER CHARGES**. Mortgagor shall pay at least thirty (30) days before they are delinquent and before interest or penalties are due thereon, without any deduction or abatement, all taxes, assessments, water and sewer rents, levies, encumbrances and all other charges or claims of every nature and kind which may be assessed, levied, imposed, suffered, placed or filed at any time against Mortgagor, the Mortgaged Property, or any part thereof or against the interest of Mortgagee therein, or which by any present or future law may have priority over the indebtedness secured hereby either in lien or in distribution out of the proceeds of any judicial sale; and Mortgagor shall produce to Mortgagee, not later than such dates, official receipts for the payment thereof.

      4.    **APPLICATION OF PAYMENTS**. All payments received by Mortgagee under the Note and Paragraph 1 hereof shall be applied by Mortgagee as follows: (i) first to any amounts due Mortgagee other than principal and interest (such as administrative charges or attorneys' fees); (ii) second to interest on any sums secured by this Mortgage; and (iii) third to the outstanding principal due under the Note.

      5.    **PRESERVATION AND MAINTENANCE OF PROPERTY; LEASEHOLDS; CONDOMINIUMS; PLANNED UNIT DEVELOPMENTS**. Except as permitted by Mortgagee, Mortgagor shall keep the Mortgaged Property in good repair and shall not commit waste or permit impairment or deterioration of the Mortgaged Property, including but not limited to alteration or demolition of the Mortgaged Property, and shall comply with the provisions of any lease if this Mortgage is on a leasehold. Furthermore, abandonment of the Mortgaged Property by the subject Mortgagor shall constitute a default under the Note and Mortgage. If this Mortgage is on one or more units in a condominium and/or property within a planned unit development, Mortgagor shall perform all of Mortgagor's obligations under the declaration of covenants creating or governing the condominium or planned unit development,

CFN: 20190275439 BOOK 31428 PAGE 2880

the by-laws and regulations of the condominium or planned unit development, and constituent documents. If a condominium or planned unit development rider is executed by Mortgagor and recorded together with this Mortgage, the covenants, and agreements of such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Mortgage as if the rider were a part hereof.

6. **PROTECTION OF MORTGAGEE'S SECURITY.**

(a)    If Mortgagor fails to perform the covenants and agreements contained in this Mortgage (including without limitation the failure to adequately insure the Mortgaged Property as described in Paragraph 2 hereof), or if any action or proceeding is commenced which materially affects Mortgagee's interest in the Mortgaged Property, including, but not limited to, eminent domain, insolvency, code enforcement, or arrangements, or proceedings involving a bankrupt or decedent, then Mortgagee at Mortgagee's option, upon notice to Mortgagor, may make such appearances, disburse such sums and take such action as is necessary to protect Mortgagee's interest (including without limitation, the force placing of insurance on all or any portion of the Mortgaged Property, disbursement of reasonable attorney's fees and entry upon the Mortgaged Property to make repairs). If Mortgagee requires mortgage insurance as a condition of making the loan secured by this Mortgage or during the term of the loan secured by this Mortgage, such mortgage insurance shall be procured by Mortgagee and Mortgagor shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with the Mortgagor's and Mortgagee's written agreement or applicable law.

(b)    Any amounts disbursed by Mortgagee pursuant to this Paragraph 6, with interest thereon, shall become additional indebtedness of Mortgagor secured by this Mortgage. Unless Mortgagor and Mortgagee agree to other terms of payment, such amounts shall be payable upon notice from Mortgagee to Mortgagor requesting payment thereof, and shall bear interest from the date of disbursement at the rate payable from time to time on outstanding principal under the Note unless payment of interest at such rate would be contrary to applicable law, in which event such amounts shall bear interest at the lesser of twelve percent (12%) per annum or the highest rate permitted by applicable law. Nothing contained in this Paragraph 6 shall require Mortgagee to incur any expense or take any action hereunder.

7.    **INSPECTION**. Mortgagee may make or cause to be made reasonable entries upon and inspections of the Mortgaged Property, provided that Mortgagee shall give Mortgagor notice prior to any such inspection specifying reasonable cause therefore related to Mortgagee's interest in the Mortgaged Property.

8.    **CONDEMNATION.**

(a)    In the event of any condemnation or taking of all or any part of the Mortgaged Property by eminent domain, alteration of the grade of any street, or other injury to or decrease in the value of the Mortgaged Property by any public or quasi-public authority or corporation, Mortgagor shall continue to promptly and completely perform all of its obligations arising under the Note and this Mortgage (including the payment of money under the Note) and all proceeds (that is, the award or agreed compensation for the damages sustained) allocable to Mortgagor, after deducting therefrom all costs and expenses of Mortgagee (regardless of the

Composite
Exhibit D
5 of 23

CFN: 20190275439 BOOK 31428 PAGE 2881

particular nature thereof and whether incurred with or without suit) including attorney's fees incurred by Mortgagee in connection with the collection of such proceeds, shall be applicable first to payment of the indebtedness secured hereby. No settlement for the damages sustained shall be made by Mortgagor without Mortgagee's prior written approval. Receipt by Mortgagee of any proceeds less than the full amount of the then outstanding debt shall not alter or modify Mortgagor's obligation to continue to pay without reduction the installments of principal, interest and other charges specified in the Note and herein. All the proceeds shall be paid directly to Mortgagee and shall be applied in the order and in the amounts that Mortgagee, in Mortgagee's sole discretion, may elect, to the payment of costs, expenses, principal (whether or not then due and payable), interest or any sums secured by this Mortgage or toward payment, after the aforesaid deductions for Mortgagee's costs and expenses, to Mortgagor, on such terms as Mortgagee may specify, to be used for the sole purpose of altering, restoring, or rebuilding any part of the Mortgaged Property which may have been altered, damaged, or destroyed as a result of the taking, alteration of grade, or other injury to the Mortgaged Property.

(b)      Mortgagee shall have the right to prosecute to final determination or settlement an appeal or other appropriate proceedings in the name of Mortgagee or Mortgagor for which Mortgagee is hereby appointed irrevocably as attorney-in-fact for Mortgagor, which appointment, being for security, is irrevocable. In that event, the expenses of the proceedings, including reasonable counsel fees, shall be paid first out of the proceeds, and only the excess, if any, paid to Mortgagee, shall be credited against the amounts due under this Mortgage.

(c)      Nothing herein shall limit the rights otherwise available to Mortgagee, at law or in equity, including the right to intervene as a party to any condemnation proceeding.

9.      **FORBEARANCE BY MORTGAGEE NOT A WAIVER**. Any forbearance by Mortgagee in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy. The procurement of insurance or the payment of taxes or other liens or charges by Mortgagee shall not be a waiver of Mortgagee's right to accelerate the maturity of the indebtedness secured by this Mortgage.

10.      **REMEDIES CUMULATIVE**. All remedies provided in this Mortgage are distinct and cumulative to any other right or remedy under this Mortgage or afforded by law or equity, and may be exercised concurrently, independently, or successively.

11.      **SUCCESSORS AND ASSIGNS BOUND; JOINT AND SEVERAL LIABILITY; CAPTIONS**. The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to the respective successors and assigns of Mortgagee and Mortgagor, subject to the provisions of Paragraph 14 hereof. All covenants and agreements of Mortgagor shall be joint and several. The captions and headings of the paragraphs of this Mortgage are for convenience only and are not be used to interpret or define the provisions hereof.

12.      **NOTICE**. All communications required hereunder shall be in writing and shall be sent by either hand delivery, special delivery service (e.g. Federal Express), electronic mail, or certified mail, postage prepaid, return receipt requested. Notice shall be conclusively

CFN: 20190275439 BOOK 31428 PAGE 2882

presumed to have been given three (3) business days after notice is sent by certified mail, the next business day after notice is sent by special delivery service, or upon receipt if sent by hand delivery or by electronic mail. For purposes hereof, the address of the parties hereto (until notice of a change thereof is served as provided in this section) shall be as follows:

MORTGAGEE:  **FMF&J Investments, LLP**
11 Island Avenue, PH 10 N.
Miami Beach, FL 33139

MORTGAGOR:  **HURAM ENTERPRISES INC AND ROLANDO ALFREDO RODRIGUEZ**, President, and **MARIA V. MATAMOROS de RODRIGUEZ**, Vice-President, Together, and Individually,
Residing at
6740 S.W. 125th Ave.
Miami, FL 33183

13.  **GOVERNING LAW; SEVERABILITY**. This Mortgage shall be governed by the law of the State of Florida. In the event that any provision or clause of this Mortgage or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Mortgage or the Note which can be given effect without the conflicting provision, and to this end the provisions of the Mortgage and the Note are declared to be severable.

14.  **NO TRANSFER.**

(a)  If all or any part of the Mortgaged Property, including an equitable interest therein, is sold, assigned or transferred by Mortgagor without Mortgagee's prior written consent (which consent may be granted or withheld in Mortgagee's sole discretion), Mortgagee shall declare all the sums secured by this Mortgage to be immediately due and payable.

(b)  Notwithstanding any other provision of this Mortgage, if Mortgagor shall encumber or pledge all or part of the Mortgaged Property without Mortgagee's prior written consent (which consent may be granted or withheld in Mortgagee's sole discretion), or if a lien or encumbrance is recorded against or otherwise affects the Mortgaged Property (other than the lien of this Mortgage), without Mortgagee's prior written consent (which consent may be granted or withheld in Mortgagee's sole discretion) whether voluntary, involuntary or by operation of law, Mortgagor shall be in default hereunder and Mortgagee may, at its option, declare all the sums secured by this Mortgage to be immediately due and payable.

(c)  Notwithstanding any other provision of this Mortgage, if Mortgagor are an entity, if any interest in Mortgagor (or any entity that owns or controls Mortgagor) is issued, sold, transferred, assigned, conveyed, mortgaged, pledged or otherwise disposed of, whether voluntarily or by operation of law, and whether with or without consideration, or any agreement for any of the foregoing is entered into, executed or delivered, Mortgagee may, at its option, declare all the sums secured by this Mortgage to be immediately due and payable.

15.  **EVENTS OF DEFAULT**. The following shall constitute events of default ("Event of Default") hereunder:

CFN: 20190275439 BOOK 31428 PAGE 2883

(a)    Failure of Mortgagor to pay any installment of principal or interest, or any other sum due under the Note, this Mortgage or the Loan Documents within five (5) days after such installment is due under the Note, this Mortgage or the Loan Documents.

(b)    Mortgagor's nonperformance of or noncompliance with any of the agreements, conditions, covenants, provisions, or stipulations contained in the Note or in this Mortgage, or in any Loan Documents.

(c)    Any assignment for the benefit of creditors made by Mortgagor.

(d)    Appointment of a receiver, liquidator, or trustee of Mortgagor or of any of the property of Mortgagor, insolvency of Mortgagor or the filing by or against Mortgagor of any petition or the bankruptcy, reorganization or arrangement of Mortgagor pursuant to the Federal Bankruptcy Code or any similar federal or state statute, the institution of any proceeding for the dissolution or liquidation of Mortgagor or if Mortgagor admits in writing the inability to pay their debts as they mature, provided, however, that the filing of an involuntary bankruptcy petition against Mortgagor shall not constitute an Event of Default if such petition (and the resulting proceeding) is dismissed within thirty (30) days after the date same was filed.

(e)    Upon the death or mental or physical incapacity of any Mortgagor who is a natural person, or the dissolution or merger or consolidation or termination of the existence of any Mortgagor that is a business entity (or if any person controlling such Mortgagor shall take any action authorizing or leading to the same).

(f)    If any of the events set forth in Subparagraphs (c), (d) or (e) of this Paragraph 15 shall have happened to any general partner or joint venturer of Mortgagor if Mortgagor is a partnership or joint venture or to any guarantor of the Note, if any, or if any such guarantor shall default under its guaranty.

(g)    A default by any Mortgagor under any note, mortgage, guaranty or any other instrument of indebtedness or any agreement now or hereafter executed by any Mortgagor in favor of Mortgagee or any affiliate of Mortgagee.

(h)    A writ of execution or attachment or any similar process shall be issued or levied against all or any part of an interest in the Mortgaged Property, or any judgment shall be entered against any Mortgagor or which shall become a lien on the Mortgaged Property or any portion thereof or any interest therein, provided, however, that the issuing or levying of a writ of execution or attachment or any similar process against any Mortgagor shall not constitute an Event of Default if such writ of execution or attachment or similar process (and the resulting proceeding) is dismissed within thirty (30) days after the date same was filed.

(i)    If any representation, warranty, statement, certificate, schedule or report delivered or communicated to Mortgagee by or on behalf of any Mortgagor in connection with the loan evidenced by the Note or with respect to the Mortgaged Property, is false or misleading in any material respect as of the date made, or the Mortgagor not have title to the mortgaged property at any time relevant hereto.

Composite
Exhibit D
8 of 23

CFN: 20190275439 BOOK 31428 PAGE 2884

16.    **REMEDIES.**

(a)    Upon the happening of any Event of Default, the entire unpaid balance of the principal, the accrued interest and all other sums secured by this Mortgage shall become immediately due and payable, at the option of Mortgagee, without notice or demand.

(b)    When the entire indebtedness shall become due and payable, either because of maturity or because of the occurrence of any Event of Default, or otherwise, then forthwith Mortgagee shall be entitled to all remedies allowed at law and in equity, including, without limitation:

(i)    Foreclosure. Mortgagee may institute an action to foreclose this Mortgage, or take such other action at law or in equity for the enforcement of this Mortgage and the security interest, liens, and encumbrances herein created as to the Mortgaged Property and realization on the mortgage security or any other security herein or elsewhere provided for, as the law may allow, and may proceed therein to final judgment and execution for the entire unpaid balance of the principal debt, with interest at the rate stipulated in the Note to the date of default, and thereafter at a "Default Rate" which shall be the lesser of twelve percent (12%) per annum or the highest rate permitted by applicable law, together with all other sums due by any Mortgagor in accordance with the provisions of the Note and this Mortgage, and all sums which may have been advanced by Mortgagee for taxes, water or sewer rents, charges or claims, payments on prior liens, insurance or repairs to the Mortgaged Property, and all costs of suit at trial and appellate levels.

(ii)    Judicial Remedies. Mortgagee may proceed by suit or suits, at law or in equity, to enforce the payment of the indebtedness and the performance and discharge of the obligations in accordance with the terms hereof, of the Note, and the other Loan Documents, to foreclose the liens and security interests of this Mortgage as against all or any part of the Mortgaged Property, and to have all or any part of the Mortgaged Property sold under the judgment or decree of a court of competent jurisdiction. This remedy shall be cumulative of any other non-judicial remedies available to the Mortgagee with respect to the Loan Documents. Proceeding with a request or receiving a judgment for legal or equitable relief shall not be or be deemed to be an election of remedies or bar any available non-judicial remedy of the Mortgagee.

(iii)    Possession.    Mortgagee may enter into possession of the Mortgaged Property, with legal action, or without legal action if any Mortgagor has abandoned the Mortgaged Property and may take and perform any actions or acts which any Mortgagor might take or perform if any Mortgagor continued in possession of the Mortgaged Property; collect therefrom all rentals (which term shall also include sums payable for use and occupation) and, after deducting all costs of collection and administration expenses, apply the net rentals to any or all of the following in such order and amounts as Mortgagee, in Mortgagee's sole discretion, may elect: the payment of taxes, water and sewer rents, charges and claims, insurance premiums, and all other carrying charges, and to the maintenance, repair, or restoration of the Mortgaged Property, and on account and in reduction of the principal or interest, or both, hereby secured; in and for that purpose Mortgagor hereby collaterally assigns to Mortgagee all rentals due and to become due under any lease or leases or rights to use and occupation of the Mortgaged Property hereafter created, as well as all rights and remedies provided in such lease or leases or at law or

CFN: 20190275439 BOOK 31428 PAGE 2885

in equity

for the collection of the rentals. Mortgagee shall be entitled to the appointment of a receiver of all the rents, issues and profits, as a matter of strict right, regardless of the value of the Mortgaged Property and the solvency or insolvency of Mortgagor and other persons liable to pay such indebtedness.

        (iv)   <u>Uniform Commercial Code.</u> Mortgagee may pursue any and all remedies available under the Uniform Commercial Code, Chapter 679, Florida Statutes; it being hereby agreed that fifteen (15) days notice as to time and place of any sale shall be reasonable.

        (v)   <u>Remedies Cumulative.</u>  All rights, remedies, and recourses of Mortgagee granted in the Note, this Mortgage, the other Loan Documents, or otherwise available at law or equity  shall be cumulative.

        (c)   Mortgagee shall have the right, from time to time, to bring an appropriate action to recover any sums required to be paid by Mortgagor(s) under the terms of this Mortgage, as they become due, without regard to whether or not the principal indebtedness or any other sum secured by the Note and this Mortgage shall be due, and without prejudice to the right of Mortgagee thereafter to bring an action of mortgage foreclosure, or any other action, for any default by Mortgagor(s) existing at the time the earlier action was commenced.

        (d)   Any real estate sold pursuant to this Mortgage or pursuant to any judicial proceedings under this Mortgage or the Note may be sold in one parcel, as an entirety, or in such parcels and in such manner or order as Mortgagee, in its sole discretion, may elect.

        (e)   Upon, or at any time after the filing of an action to foreclose this Mortgage, the court in which such action is filed may, at the request of Mortgagee, appoint a receiver of the Mortgaged Property and Mortgagor(s) irrevocably consent(s) to such appointment. Such appointment may be made either before or after sale without regard to the solvency or insolvency of any Mortgagor, or any other person liable for the payment of such indebtedness, at the time of application for such receiver and without regard to either the then value of the Mortgaged Property, the adequacy or inadequacy of any remedy available at law, or whether the Mortgaged Property shall be then occupied as a homestead or not, and Mortgagee hereunder or any agent of Mortgagee may be appointed as such receiver. Such receiver shall have the power to perform all of the acts permitted Mortgagee pursuant to Subparagraph 16(b)(ii) hereof and such other powers which may be necessary or are customary in such cases for the protection, possession, control, management, and operation of the Mortgaged Property during such period.

      17.   **ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER**. As additional security hereunder, and as permitted under Section 697.07, Florida Statutes, Mortgagor(s) hereby assign(s) to Mortgagee the rents of the Mortgaged Property. All rents collected by Mortgagee shall be applied first to payment of the costs of management of the Mortgaged Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorney's fees, and then to the sums secured by this Mortgage. The Mortgagee shall be liable to account only for those rents actually received.

      18.   **FUTURE ADVANCES**.  This Mortgage shall secure such future advances as

Composite
Exhibit D
10 of 23

CFN: 20190275439 BOOK 31428 PAGE 2886

may be made by Mortgagee, at its sole and absolute discretion and for any purpose, within twenty (20) years from the date of this Mortgage. All such future advances shall be secured to the same extent as if made on the date of the execution of this Mortgage, and shall take priority as to third persons without actual notice from the time this Mortgage is filed for record as provided by law. The total amount of indebtedness secured by this Mortgage may decrease or increase from time to time, but the total unpaid balance so secured at any one time shall not exceed two (2) times the principal sum secured herein, plus interest and any disbursements made for the payment of taxes, levies or insurance on the Mortgaged Property, with interest on those disbursements. Nothing herein shall require Mortgagee to make any such future advance.

19.    **RELEASE**. Upon payment of all sums secured by this Mortgage, Mortgagee shall satisfy this Mortgage without charge to Mortgagor(s). Mortgagor(s) shall pay all costs of recordation, of such satisfaction.

20.    **ATTORNEY'S FEES**. If Mortgagee becomes a party to any suit or proceeding (including, without limitation, appellate and bankruptcy proceedings) affecting the Mortgaged Property or title thereto, the lien created by this Mortgage or Mortgagee's interest therein, or if Mortgagee has engaged counsel to prepare or review the Note, or if after the closing of the loan secured by this Mortgage, Mortgagee engages counsel for any reason concerning the Note, this Mortgage, the Mortgaged Property, or any other documents securing the Note (other than Mortgagee's sale of the Loan), or if Mortgagee engages counsel to collect any of the indebtedness herein secured or to enforce performance of the agreements, conditions, covenants, provisions or stipulations of this Mortgage, the Note or other security documents, Mortgagee's costs, expenses and reasonable counsel fees, whether or not suit is instituted, shall be paid to Mortgagee by Mortgagor(s), on demand, with interest at the then effective rate set forth in the Note, and until paid they shall be deemed to be part of the indebtedness evidenced by the Note and secured by this Mortgage. As used in this Mortgage and in the Note, "attorney's fees" shall include all attorney's fees and disbursements incurred by Mortgagee in any collection or enforcement action and in any related appellate proceeding or post-judgment action.

21.    **HAZARDOUS WASTE.**

(a)    "Hazardous Materials" shall mean any flammable explosives, radioactive materials, hazardous wastes, toxic substances or related materials and shall also mean, but shall not be limited to, substances defined as "hazardous substances" in the Comprehensive Environmental Response, Compensation and Liability Act of 1975, 49 U.S.C. Sections 1801-1812; the Resource Conservation and Recovery Act of 1976, 42 U.S.C. Sections 6901-6987; and those substances defined as "hazardous substances" in the Florida Hazardous Substances Law, Sections 501.0651 - 501.121, Florida Statutes.

(b)    "Hazardous Materials Claims" shall mean:

(i)    any and all enforcement, cleanup, remedial removal or other governmental or regulatory actions instituted, completed or threatened pursuant to Hazardous Materials Laws;

(ii)    all claims made or threatened by any third party against the Mortgagor(s) or the Mortgaged Property relating to damage, contributions, cost recovery

CFN: 20190275439 BOOK 31428 PAGE 2887

compensation, loss, or injury resulting from any Hazardous Materials.

(c)     "Hazardous Materials Laws" shall mean any Federal, and as applicable, State, or local laws, ordinances, or regulations relating to Hazardous Materials.

(d)     Mortgagor(s) covenant(s) to keep and maintain the Mortgaged Property in compliance with (and shall not cause or permit the Mortgaged Property to be in violation of) any Federal, and as applicable, State or local laws, ordinances, or regulations relating to industrial hygiene or to environmental conditions on, under, or about the Mortgaged Property, including, but not limited to, soil and underground conditions. Mortgagor(s) shall not use, generate, manufacture, store, or dispose of Hazardous Materials on the Mortgaged Property.

(e)     Mortgagor(s) covenant(s) to notify Mortgagee, in writing, of the nature of any Hazardous Materials claims immediately upon their occurrence.

(f)     Mortgagor(s) covenant(s) to indemnify, and defend Mortgagee, its directors, officers, employees, and agents from and against any and all claims, damages, and liabilities arising in connection with the presence, use, storage, disposal, or transport of any Hazardous Materials on, under, from, or about the Mortgaged Property including, without limitation,

(i)     all foreseeable and all unforeseeable consequential damages directly or indirectly arising out of the use, generation, storage, or disposal of Hazardous Materials by Mortgagor(s) or any prior owner or operator of the Mortgaged Property;

(ii)     all costs of any required or necessary repair, cleanup, or detoxification and the preparation of any closure or other required plans, to the full extent that such action is attributable, directly or indirectly, to the presence, use, generation, storage, release, threatened release, or disposal of Hazardous Materials by any person on the Mortgaged Property. Mortgagor(s)'s obligation pursuant to the foregoing indemnity shall survive the repayment of the loan amount.

(iii)     all attorneys' fees and costs incurred by Mortgagee.

(g)     Mortgagee shall have the right to join in and participate in, as a party if it so elects, any legal proceedings or actions initiated in connection with any Hazardous Materials Claims, Mortgagee's reasonable attorney's fees and costs in connection therewith shall be reimbursed by Mortgagor(s) upon demand; all such fees and costs shall be added to the indebtedness under the Mortgage and shall be secured hereby.

(h)     Mortgagor(s) shall, at any time, and from time to time, within thirty (30) days after notice and written demand by Mortgagee (provided Mortgagee has reasonable belief that an environmental concern or problem exists on, at or in connection with the Mortgaged Property), deliver to Mortgagee a written environmental evaluation of the Mortgaged Property, which evaluation shall address matters as to whether the Mortgaged Property, or any part thereof, has or is being used for the use, handling, storage, transportation, or disposal of Hazardous Materials and if so, as to whether such use, handling, storage, transportation, or disposal conforms to the requirements of Hazardous Materials Laws. The evaluation shall be

CFN: 20190275439 BOOK 31428 PAGE 2888

performed by an independent, recognized environmental consulting firm of duly licensed registered engineers.

22. **<u>WAIVER OR RELEASE BY MORTGAGEE</u>**. Without affecting the liability of Mortgagor(s) or any other person (except any person expressly released in writing) for payment of any indebtedness secured hereby or for performance of any obligation contained herein, and without affecting the rights of Mortgagee with respect to any security not expressly released in writing, Mortgagee may, at any time, and from time to time, either before or after maturity of said Note, and without notice or consent:

(a)     Release any person liable for payment of all or any part of the indebtedness or for performance of any obligation;

(b)     Make any agreement extending the time or otherwise altering the terms of payment of all or any part of the indebtedness, or modifying or waiving any obligation, or subordinating, modifying or otherwise dealing with the lien or charge hereof;

(c)     Have exercised or refrain from exercising, or waived any right Mortgagee may accept additional security of any kind;

(d)     Release or otherwise deal with any property, real or personal, securing the indebtedness, including all or any part of the Mortgaged Property.

CFN: 20190275439 BOOK 31428 PAGE 2889

23.  **SUBROGATION**. Mortgagee shall be subrogated to the lien of any and all prior encumbrances, liens, or charges paid and discharged from the proceeds of the Note hereby secured, and even though such prior liens have been released of record, the repayment of the Note shall be secured by such liens on the portions of the Mortgaged Property affected thereby to the extent of such payments, respectively.

24.  **NO SUBORDINATE FINANCING.** Mortgagor(s) is (are) precluded from securing Mortgaged Property with any secondary mortgages unless agreed to by Mortgagee in writing.

25.  **WAIVER OF JURY TRIAL**. THE UNDERSIGNED WAIVES THE RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING BASED UPON, OR RELATED TO, ANY ASPECT OF THE TRANSACTION IN CONNECTION WITH WHICH THIS DOCUMENT IS BEING GIVEN OR ANY DOCUMENT EXECUTED OR DELIVERED IN CONNECTION WITH SUCH TRANSACTION. THIS WAIVER IS KNOWINGLY, INTENTIONALLY AND VOLUNTARILY MADE BY THE UNDERSIGNED AND THE UNDERSIGNED ACKNOWLEDGES THAT NO ONE HAS MADE ANY REPRESENTATIONS OF FACT TO INDUCE THIS WAIVER OF TRIAL BY JURY OR IN ANY WAY TO MODIFY OR NULLIFY ITS EFFECT. THE UNDERSIGNED FURTHER ACKNOWLEDGES HAVING BEEN REPRESENTED IN CONNECTION WITH THE TRANSACTION WITH RESPECT TO WHICH THIS DOCUMENT IS BEING GIVEN AND IN THE MAKING OF THIS WAIVER BY INDEPENDENT LEGAL COUNSEL, SELECTED BY THE UNDERSIGNED'S OWN FREE WILL, AND THAT THE UNDERSIGNED HAS HAD THE OPPORTUNITY TO DISCUSS THIS WAIVER WITH SUCH COUNSEL. THE UNDERSIGNED FURTHER ACKNOWLEDGES HAVING READ AND UNDERSTOOD THE MEANING AND RAMIFICATIONS OF THIS WAIVER PROVISION.

**THIS IS A BALLOON MORTGAGE AND PROMISSORY NOTE AND THE FINAL PAYMENT OR THE PRINCIPAL BALANCE DUE ON MATURITY IS $293,000.00, TOGETHER WITH ACCRUED INTEREST, IF ANY, AND ALL ADVANCEMENTS MADE BY MORTGAGEE UNDER THE TERMS OF THIS MORTGAGE.**

[SIGNATURES FOLLOW]

Composite
Exhibit D
14 of 23

CFN: 20190275439 BOOK 31428 PAGE 2890

**IN WITNESS WHEREOF**, Mortgagor has executed this Mortgage as of the date and year first written above.

Signed, Sealed and
Delivered

HURAM ENTERPRISES, INC.

BY: _____

Rolando Alfredo Rodriguez, President


ROLANDO ALFREDO RODRIGUEZ,

6740 S.W. 125th Avenue,

Miami, FL 33183

_____

Rolando Alfredo Rodriguez, Individually


MARIA V. MATAMOROS de
RODRIGUEZ

6740 S.W. 125th Avenue,

Miami, FL 33183

_____

Maria V. Matamoros de Rodriguez, Individually

Composite
Exhibit D
15 of 23

CFN: 20190275439 BOOK 31428 PAGE 2891

STATE OF FLORIDA
COUNTY OF MIAMI-DADE SS:

I Hereby certify that on this day, before me, an officer duly authorized in the State of Florida,
County of Miami-Dade, to take acknowledgments that Rolando A. Rodriguez, President; and,
Maria V. Matamoros, Vice-President for and as owners of HURAM ENTERPRISES, INC. , and
they personally appeared to me known to be the person(s) described in or who identified
themselves to be the person(s) described by means of government issued identification (photo ID,
driver's license, U.S. Passport) and, if applicable, a certificate of authority granting right to
execute legal documents, and who executed the foregoing instrument and acknowledged before
me that Rolando A. Rodrigues, President; and Maria V. Matamoros, Vice-President for and as
owners of HURAM ENTERPRISES, INC., executed the same for the purpose expressed.

Witnessed by my hand and official seal in Miami-Dade County and State of Florida on this date
of _March_, _29_, 2019.

_____          _March 13, 2023_____
(Notary Public Signature)                My Commission Expires

```
KARLA L FERNANDEZ
Notary Public-State of Florida
Commission # GG 311356
My Commission Expires
March 13, 2023
```

Composite
Exhibit D
16 of 23

CFN: 20190275439 BOOK 31428 PAGE 2892

## EXHIBIT "A"

## LEGAL DESCRIPTION

**The Southwest 1/4 of the Southwest 1/4 of the Northwest 1/4 of the Northeast 1/4 of Section 3, Township 56 South, Range 38 East, lying and being in Miami-Dade County, Florida.**

**LESS AND EXCEPT that portion thereof as conveyed to the County of Dade by Right-of-Way Deed recorded in Official Records Book 9579, Page 423, of the Public Records of Miami-Dade County, Florida.**

(the "Mortgaged Property" or "Property").

a/k/ 20155 SW 188th Street, Miami, FL 33187

Parcel: 30-6803-000-0076

This property is not the homestead property of the Borrower(s)

Composite
Exhibit D
17 of 23

HURAM ENTERPRISES, INCL, And

Rolando A. Rodriguez, President; And,

Maria V. Matamoros de Rodriguez, Vice-President, at

6740 S.W. 125th Avenue

Miami, FL 33183


PARCEL ID#: 30-6803-000-0076.

## PROMISSORY NOTE

**THIS IS A BALLOON MORTGAGE AND THE FINAL PAYMENT OR THE PRINCIPAL BALANCE DUE ON MATURITY IS $293,000.00, TOGETHER WITH ACCRUED INTEREST, IF ANY, AND ALL ADVANCEMENTS MADE BY MORTGAGEE UNDER THE TERMS OF THIS MORTGAGE.**

**$293,000.00**                                                                                       **March 29th, 2019**

FOR VALUE RECEIVED, **HURAM ENTERPRISES INC. AND, ROLANDO ALFREDO RODRIGUEZ**, President, and **MARIA V. MATAMOROS de RODRIGUEZ**, Vice-President, together and individually, and whose mailing address is 6740 S.W. 125th Avenue, Miami, FL 33183, herein after, referred to as (the "Maker"), the terms Maker and Payee shall denote the singular and/or plural wherever the context so requires or admits, Maker promises to pay to the order of FMF&J INVESTMENTS, LLP, a Florida limited liability partnership, whose address is 11 Island Avenue, PH10, Miami Beach, FL 33146 or its successors or assigns ("Payee"), the principal sum of **TWO HUNDRED N I N E T Y - T H R E E  T H O U S A N D D O L L A R S  A N D  N O  C E N T S (U.S. $293,000.00)** in lawful money of the United States of America, or so much of that sum as may be advanced under this Note, together with interest from the date or dates of disbursement or several partial disbursements, as the case may be, on the outstanding balance thereof, at the rate and on the terms set forth herein, as follows:

1.      Interest shall begin accruing beginning on the date of this Note.  Payments under this Note shall be as follows:

      (a)      During the term of this Note, the interest rate ("Interest Rate") on the principal amount outstanding shall be Twelve Percent (12%) per annum.

      (b)      The entire unpaid principal balance of this Note and all interest accrued thereof and all other sums payable hereunder shall be due and payable, in full, on  March 29th, 2021 (the "Maturity Date").

2.      The monthly and/or all accrued payments, shall be payable at 11 Island Avenue, PH10, Miami Beach, FL 33139, or at such other place as Payee or holder, from time to time, may designate in writing.

3.      Maker agrees that all loan fees and other prepaid finance charges are earned fully as of the date of

Rolando A. Rodriguez, President, and Individually

Composite Exhibit D

18 of 23

the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law. Maker may not pay all or a portion of the principal amount of this Note without penalty within the first six (6) months of this Note (the "Prepayment Fee Cut-Off Date"). If any prepayment with respect to the principal amount of this Note is made prior to the Prepayment Fee Cut-Off Date, Maker shall pay to Payee, a prepayment fee equal to six (6) months of interest, less the difference between all other interests amounts due hereunder.

4.    Payment of this Note is secured by a Mortgage and Security Agreement (the "Mortgage") from Maker to Payee dated the same date as this Note, intended to be recorded promptly, secured upon certain premises situated in the County of Miami-Dade, State of Florida, together with the buildings and other improvements constructed and to be constructed on such premises, more particularly described in the Mortgage (referred to as the "Mortgaged Property"). Maker does hereby mortgage, grant and convey to Payee, its successors and assigns, in fee simple, all that certain tract of land of which the Borrower is now the legal owner, and in actual possession, situated in the County of Miami-Dade, State of Florida, described as follows:

**THE SOUTHWEST 1/4 OF THE SOUTHWEST 1/4 OF NORTHWEST 1/4 OF THE NORTHEAST 1/4 IN SECTION 3, TOWNSHIP 56 SOUTH, RANGE 38 EAST, LYING AND BEING IN MIAMI -DADE COUNTY, FLORIDA**
(the "Mortgaged Property" or "Property").

a/k/ 20155 SW 188th Street, Miami, in the County of Miami-Dade, State of Florida 33187

Parcel: 30-6803-000-0076

This property is not the homestead property of the Borrower(s)

5.    All of the agreements, conditions, covenants, provisions and stipulations contained in the Mortgage of even date herewith and between the parties hereto, which are to be kept and performed by Maker, are hereby made a part of this Note to the same extent and with the same force and effect as if they were fully set forth herein, and Maker covenants and agrees to keep and perform them, or cause them to be kept and performed, strictly in accordance with their terms.

6.    If any installment of interest or principal and interest or any other payment is not paid within five (5) days after the date due under the terms of this Note, or of the Mortgage, if applicable, or of any of the other loan documents executed in connection with this transaction (the "Loan Documents"), then there shall also be immediately due and payable a late charge in an amount equal to five percent (5%) of the delinquent payment.

7.    It is further understood, however, that if (i) any payment due on the Maturity Date is not made on or before the Maturity Date or any other payment of principal is not made when due, or (ii) should any default be made in the payment of any installment of principal and interest or any other payment due under this Note on the date such payment is due, and such payment is not made within five (5) days after the date such payment shall have been due, or (iii) should any default be made in the performance, beyond applicable grace period, of any of the agreements, conditions, covenants, provisions or stipulations contained in this Note, or in any of the Loan Documents, then Payee, at its option and without notice to Maker which notice is expressly waived by Maker unless expressly required elsewhere in this Note or in the Loan Documents,

2

Rolando A. Rodriguez, President, and Individually

*RC AC*  Composite
Exhibit D
19 of 23

may declare due and payable immediately the entire unpaid balance of principal with interest accrued on it at the applicable rate specified above to the date of default and after that date at a Default Rate (as such term is hereinafter defined) and all other sums due by Maker under this Note or under the Mortgage, or under any of the other Loan Documents, notwithstanding anything to the contrary in this Note or in the Loan Documents, and payment may be enforced and recovered in whole or in part at any time by one or more of the remedies provided to Payee in this Note, in the Mortgage or in any of the other Loan Documents. As used in this Note and the Loan Documents, the "Default Rate" shall be equal to the lesser of twelve percent (12%) or the highest rate permitted by applicable law. Maker shall be responsible for any and all expenses incurred by the Payee in connection with the loan evidenced by this Note (the "Loan"), including reasonable attorneys' and paralegals' fees, whether arising from Payee's enforcement of its remedies, administration of any waivers or consents, verification of Maker's compliance with the terms of the Loan, or otherwise (whether incurred before or at trial, on appeal or in bankruptcy).

8.  Payee's failure to exercise its option to accelerate the indebtedness evidenced by this Note shall not constitute a waiver of the right to exercise that option at any other time so long as that event of default remains outstanding and uncured, or to exercise it upon the occurrence of another default.

9.  The remedies of Payee as provided in this Note, the Mortgage or the other Loan Documents, shall be cumulative and concurrent; may be pursued singly, successively, or together at the sole discretion of Payee, may be exercised as often as occasion for their exercise shall occur; and in no event shall the failure to exercise any such right or remedy be construed as a waiver or release of it.

10. Maker agrees that any real estate that may be levied upon pursuant to a judgment obtained by virtue of this Note, or any writ of execution issued on it, may be sold upon any such writ in whole or in part in any order desired by Payee.

11. Maker and all endorsers, sureties and guarantors jointly and severally waive presentment for payment, demand, notice of demand, notice of nonpayment or dishonor, protest and notice of protest of this Note, and all other notices in connection with the delivery, acceptance, performance, default or enforcement of the payment of this Note, except as expressly provided herein or in the Loan Documents, and they agree that the liability of each of them shall be unconditional without regard to the liability of any other party, and shall not be affected in any manner by any indulgence, extension of time, renewals, waivers, releases, or modifications that may be granted by Payee with respect to the payment or other provisions of this Note, and to the release of the collateral or any part of it, with or without substitution, and agree that additional Makers, endorsers, guarantors, or sureties may become parties to it without notice to them or affecting their liability under this Note.

12. If any provision of this Note is held to be invalid or unenforceable by a court of competent jurisdiction, the other provisions of this Note shall remain in full force and effect and shall be construed liberally in favor of Payee in order to effectuate the provisions of this Note. In no event shall the rate of interest payable under this Note exceed the maximum rate of interest permitted to be charged by the applicable law (including the choice of law rules) and any interest paid in excess of the permitted rate shall be refunded to Maker. That refund shall be made by application of the excessive amount of interest paid against any sums outstanding and shall be applied in such order as Payee may determine. If the excessive amount of interest paid exceeds the sums outstanding, the portion exceeding the sums outstanding shall be refunded in cash by Payee. Any crediting or refund shall not cure or waive any default by Maker under this Note. Maker agrees,

3

Rolando A. Rodriguez, President, and Individually

however, that in determining whether or not any interest payable under this Note exceeds the highest rate permitted by law, any non-principal payment including, without limitation, prepayment fees and late charges shall be deemed, to the extent permitted by law, to be an expense, fee, premium or penalty rather than interest.

13. Payee shall not be deemed, by any act of omission or commission, to have waived any of its rights or remedies under this Note unless the waiver is in writing and signed by Payee, and then only to the extent specifically set forth in the writing. A waiver on one event shall not be construed as continuing or as a bar to or waiver of any right or remedy to a subsequent event. A release of one or more parties hereto or of any guarantor hereof shall not constitute a release of any other party or guarantor.

14. This instrument shall be governed by and construed according to the laws of the State of Florida.

15. Upon default by Maker in the payment hereof, Payee shall have the right, immediately and without further action or notice by it, to set off against the Note and the indebtedness evidenced hereby, all money owed (if any) by the Payee or any affiliate thereof to the Maker or any guarantor, in any capacity, whether or not due, and also to set off against all other liabilities of the Payee or any affiliate to Maker or any guarantor all money owed by Payee or any affiliate in any capacity to Maker or any guarantor.

16. Whenever used, the singular number shall include the plural, the plural the singular, the use of any gender shall be applicable to all gender, and the words "Payee" and "Maker" shall be deemed to include the respective heirs, personal representatives, successors and assigns of Payee and Maker. If Maker consists of more than one person, corporation or other entity, the obligations and liabilities of such persons, corporations or other entities under this Note shall be joint and several, and the word "Maker" shall mean all or some or any of them.

17. All notices given to Maker or Payee shall be given in writing and shall be sent by either hand delivery, special delivery service (e.g. Federal Express), electronic mail or certified mail, postage prepaid, at the addresses written above or such other address as may be designated by Maker or Payee from time to time. Notice shall be conclusively presumed to have been given three (3) business days after notice is sent by certified mail, the next business day after notice is sent by special delivery service, or upon delivery if sent by hand delivery or by electronic mail.

18. All payments under this Note shall be made in such coin or currency of the United States of America as at the time of payment shall be legal tender for the payment of public or private debts.

19. Time is of the essence as to each provision of this Note or the Mortgage which requires Maker to take any action within a specified time period.

20. The Florida Documentary Stamp Tax due on this Note has been paid upon recording the Mortgage.

21. Maker and Payee hereby waive any and all rights to a trial by jury in any action, proceeding, counterclaim or subsequent proceeding, brought by either Payee or Maker against the other party on any matters whatsoever arising out of, or in any way related to this Note or the other Loan Documents executed and delivered in connection herewith.

[SIGNATURES FOLLOW]

Rolando A. Rodriguez, President, and Individually

4

**IN WITNESS WHEREOF**, Maker, intending to be legally bound, has duly executed and delivered this Note.

HURAM ENTERPRISES, INC.

BY: _____

Rolando Alfredo Rodriguez, President

ROLANDO ALFREDO RODRIGUEZ,

6740 S.W. 125th Avenue,

Miami, FL 33183

_____

Rolando Alfredo Rodriguez

MARIA V. MATAMOROS de RODRIGUEZ

6740 S.W. 125th Avenue,

Miami, FL 33183

_____

Maria V. Matamoros de Rodriguez

STATE OF FLORIDA
COUNTY OF MIAMI-DADE SS:

I Hereby certify that on this day, before me, an officer duly authorized in the State of Florida, County of Miami-Dade, to take acknowledgments that Rolando A. Rodriguez, President; and, Maria V. Matamoros, Vice-President for and as owners of HURAM ENTERPRISES, INC. , and they personally appeared to me known to be the person(s) described in or who identified themselves to be the person(s) described by means of government issued identification (photo ID, driver's license, U.S. Passport) and, if applicable, a certificate of authority granting right to execute legal documents, and who executed the foregoing instrument and acknowledged before me that Rolando A. Rodrigues, President; and Maria V. Matamoros, Vice-President for and as owners of HURAM ENTERPRISES, INC., executed the same for the purpose expressed.

Witnessed by my hand and official seal in Miami-Dade County and State of Florida on this date of ___March___, ___29___, 2019.

_____
(Notary Public Signature)

March 13, 2023
My Commission Expires

KARLA L FERNANDEZ
Notary Public-State of Florida
Commission # GG 311356
My Commission Expires
March 13, 2023

5

R A Rodriguez

Rolando A. Rodriguez, President, and Individually

KARLA L FERNANDEZ
Notary Public-State of Florida
Commission # GG 251386
My Commission Expires
March 13, 2022

Composite
Exhibit D
23 of 23